## KENNEDY et al. v. CITY OF MOSCOW et al.

### No. 1492.

District Court, D. Idaho, Central Division.
May 14, 1941.

Harve H. Phipps, of Spokane, Wash., for plaintiffs.

Weldon Schimke and Murray Estes, both of Moscow, Idaho, for defendants.

CAVANAH, District Judge.

This is a suit brought by the plaintiffs, members of a group known as Jehovah's Witnesses, · claiming to be ordained ministers and followers of Jesus Christ, who · are entirely devoted to him, and his father Almighty God, whose name alone is Jehovah, and have been active in carrying out the commandments of Jesus Christ and his Father by means of literature printed by the plaintiff Watch Tower Bible and Tract Society, to enjoin the defend-

ants, the Mayor, City Council and Chief of Police of the City of Moscow, Idaho, and the State District Judge from enforcing an ordinance of the City, and from arresting and prosecuting the plaintiffs and others of Jehovah's Witnesses on account of their activity in distributing books, booklets and periodicals within the City, and declaring the ordinance invalid and void under the 14th amendment of the Federal Constitution, and the right to exercise and enjoy freedom of worship of Almighty God in accordance with the dictates of conscience and other "civil rights" and freedom of speech, of press and of assembly, as granted by the first amendment.

The plaintiffs were arrested under the ordinance on two different occasions and prosecuted in the Police Court of the City by criminal complaints charging them, that on or about the 15th and 28th of March, 1941, and within the City, of distributing hand-bills, pamphlets and other printed matter along, and at divers locations upon the streets of the City without having obtained a permit so to do. They were convicted in the police Court of the City and an appeal therefrom is pending in the State District Court of which the defendant A. L. Morgan is the presiding Judge. They invoke the jurisdiction of this Court upon the asserted ground that there exists a "federal question" arising under the Constitution and laws of the United States, involving "civil rights" under the fourteenth amendment of the Constitution as guaranteed by the first amendment and under Section 41(14), Title 28 U.S.C.A., conferring jurisdiction upon this Court to entertain the suit and to redress the depriving of "civil rights" by persons acting under color of any ordinance, law or statute of the State. It further appears that the plaintiffs have been, for many years, prior to the institution of the present suit, engaged in the distribution of literature to residents of the City by going from house to house and to pedestrians upon the streets, often as gifts and at other times recipients giving small contributions, and to enable people to conduct private bible study in their homes, and that they do not advocate the overthrow of the government by violence, force or unlawful means. The ordinance of the City which is the basis of the arrest and conviction of the plaintiffs provides:

"No person shall distribute or cause to be distributed any hand-bill, card, poster, pamphlet, dodger or other printed or advertising matter along or upon any street, alley, sidewalk, or park, or throw, place or attach any such printed matter in, to or upon any automobile or other vehicle within the corporate limits of the City of Moscow without a permit obtained in the manner set forth hereinafter.

"Section 2. Any person may obtain such permit without charge by applying to any police officer of the City of Moscow, and in his presence saluting the flag of the United States by reciting what is known as the 'pledge of Allegiance' and furnishing information sufficient to identify in the future the person performing such salute.

"Section 3. Such police officer shall issue a permit in such form as he may deem adequate, containing the name of the permit holder, the date the salute was performed, and any description of the person of the permit holder that he may deem sufficient. * * *"

The plaintiffs refused to apply for a permit as required by the ordinance. It is further charged that the ordinance was adopted purposely and designedly to harass plaintiffs and deprive them of freedom of conscience, of press and of speech, and that after the ordinance was adopted, the defendant, Chief of Police, began and has continued to arrest and place the plaintiffs in prison and has threatened violence to them and demanded that they cease all their work and leave the City, and has confiscated their property and brought numerous criminal actions against them all for the purpose of injuring their constitutional rights and to injure their reputation as citizens and witnesses of God's word found in the bible.

The constitutionality of the ordinance and deprivation of plaintiffs of their "civil rights" are challenged by them and is at this time presented upon defendants' motion to dismiss. The plaintiffs asserting that the ordinance is invalid in that they are deprived of their "civil rights" under the Federal Constitution granting the free exercise of religion and abridges the freedom of speech, of the press and the right of the plaintiffs to peaceably assemble, and in violation of sections 51 and 52, Title 18 U.S.C.A., prohibiting two or more persons from conspiring to injure, oppress, threaten or intimidate any citizen in the free exercise and enjoyment of any right or privilege secured to them by the Constitution or laws of the United States, and prohibit-

ing under color of any law, statute or ordinance subjecting any inhabitant of any state to the deprivation of any right or privilege secured or protected by the Constitution and laws of the United States.

It is apparent that an attempt is made to limit the ordinance by construction but we must take the provisions of the ordinance as we find them. The language is plain. There is no room for construction unless it be as to the effect of the Constitution. The question is whether we can introduce words of limitation in an ordinance so as to make it specific, when, as expressed, it is general only. It is not a question of whether part of the ordinance is constitutional and another part is unconstitutional and void. So we are confronted at the outset with the thought that the ordinance as drawn does not define and punish specific conduct as constituting a clear and present danger to the interest of the City. We are dealing with the application of a general ordinance by the City to be essential to secure and maintain an orderly situation while religious freedom is left inviolate. The ordinance covers every sort of distribution at any time, and the only restriction as to its application with respect to place is upon the streets, sidewalks, alleys, parks and throwing such literature upon any automobile or other vehicle within the City. It is broad and prohibits distribution of pamphlets, handbills and other printed matter in the widest sense. It applies to magazines and periodicals and is not limited to printed matter that is offensive to public morals or that advocates unlawful conduct. On its face it strikes at the foundation of the freedom of the press by subjecting it to securing a permit and to censorship.

█ It is now settled that the freedom of the press embraces pamphlets, handbills, posters and cards, and it comprehends every kind of publication which affords a vehicle of information and opinion, and should not be abridged.

We must not overlook that the conduct alleged in the two criminal complaints does not amount to a breach of the peace, or engaging in a parade or procession upon the streets, or throwing literature broadcast in the streets. On the contrary it is an effort to distribute pamphlets or other printed matter upon the streets of the City and not elsewhere; which is alleged in the present complaint, to persuade a willing listener to voluntarily contribute by gift

for the literature which it is claimed to be in the nature of religious views, to enable people to know Jehovah God and his purposes expressed in the bible. It has never been regarded as inconsistent with civil liberties to grant to a city authority to impose a regulation in order to insure convenience, cleanliness, sanitation, preventing obstruction, and safety of the people in the use of the public streets, so the simple question in the particular case is, does the ordinance or regulation abridge the right of opportunities for the communication of views by speech or by distribution of literature in requiring a permit which rests in the exercise of a determination by a City officer? It will be seen that the ordinance here prohibits the distribution of any printed matter along or upon any street, alley, sidewalk, or park, or to throw or attach any such printed matter in, to or upon any automobile or other vehicle within the City limits, without a permit obtained from a police officer, and saluting, in the presence of the officer, the flag of the United States by reciting the "pledge of allegiance" and furnishing sufficient information of identification. The charges in the criminal complaints are confined to the distribution of literature upon and along the streets and not elsewhere in the City which the attempt is made to restrain enforcement.

On recent occasions the Supreme Court has held that a statute or ordinance in general terms which prohibits the distribution of pamphlets and literature within the limits of a City by persons expressing and disseminating religious views deprives them of their liberty without due process of law in contravention of the Fourteenth Amendment. In the case of Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L. Ed. 949, the Court held an ordinance invalid on its face which prohibited the distribution by hand or otherwise of literature within the limits of the City without written permission from a City officer, and again in the case of Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 150, 84 L.Ed. 155, where the Court had under review the validity of four city ordinances prohibiting the distribution of literature, one of which related to distribution along or upon any street, sidewalk, park or to passengers on any street cars or to throw, place or attach any hand-bill in to or upon any automobile or other vehicle. One, in or upon any street, sidewalk, alley, wharf, boat landing, dock or other

public place, park or ground within the City. One, in or place upon any street or way, and one prohibiting the canvassing, distributing or calling from house to house in the City, and in the Schneider case the Court pointed out:

"Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion.

"Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, a person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic; a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press deprive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion.

"This court has characterized the freedom of speech and that of the press as fundamental personal rights and liberties. The phrase is not an empty one and was not lightly used. It reflects the belief of the framers of the Constitution that exercise of the rights lies at the foundation of free government by free men. It stresses, as do many opinions of this court, the importance of preventing the restriction of enjoyment of these liberties.

"In every case, therefore, where legislative abridgment of the rights is asserted, the courts should be astute to examine the effect of the challenged legislation. Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions. And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights."

Three of the four ordinances disposed of by the Court in the Schneider case are similar to the ordinance of Moscow and the acts charged was distribution of literature in the streets, while the fourth one was under an ordinance prohibiting the distribution of literature from house to house visitations.

In every case the Court should carefully examine the effect of the ordinance as to whether it abridges the rights asserted, because the authorities of a city have the duty to keep the city's streets open and available for movement of people and so long as the ordinance carries out this end and does not abridge the liberty of one upon the streets to make known information by distribution of literature, the City may regulate the conduct of those using the street. One cannot obstruct or place obstructions in or throw literature broadcast in the streets, but the ordinance here when applied to the conduct as charged in the two criminal complaints does not present the instances in which the City may prevent, as the requirement to salute the flag as a condition precedent for a permit bears no relation to the care and upkeep of the streets. A statute prohibiting the soliciting money, services, subscriptions or any valuable thing for any religious, charitable cause, unless such cause shall have been approved, which is somewhat similar to the instance as charged in these two criminal complaints, were again before the Supreme Court in the case of Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352, where it was held that the statute deprived Cantwell of their liberty without due process of law in contravention of the Fourteenth Amendment.

It is clear that the general language of the present ordinance also runs counter to an express provision of the Idaho Constitution, as Section 4 of Article 1 provides that " * * * no person shall be denied any civil or political right, privilege, or capacity on account of his

religious opinions * * *." But it is stressed in the argument that no constitutional objection can be made requiring one to secure a permit from, and submit to censorship and saluting the flag of the United States by reciting what is known as the "pledge of allegiance" in the presence of a police officer of the City before permission will be granted to distribute literature on the streets as it is within the scope of Minersville School District, Board of Education of Minersville School District et al., v. Gobitis et al., 310 U.S. 586, 60 S.Ct. 1010, 1013, 84 L.Ed. 1375, 127 A. L.R. 1493. Are the two situations distinguishable when we compare the general language of the present ordinance with the situation before the Court in the Gobitis case? The Court in the Gobitis case had before it the constitutionality of an order of the School Board requiring minors attending the public schools to salute the National Flag as a condition to their right to attend, and said that the order was "not aimed at the promotion or restriction of religious beliefs" but was adopted as "the appropriateness of various means to evoke that unifying sentiment without which there can ultimately be no liberties, civil or religious." It was there pointed out that no restriction upon the right of free expression was involved, while here, when we consider the ordinance containing general language which applies to any and all instances and attempts to distribute literature of every kind or character, whether it relates to expression of religious views or other lawful expressions, we are confronted with the requirement of censorship and saluting the flag in the presence of a police officer before one can distribute such literature. Such requirement runs counter to the Federal Constitution as interpreted by the Supreme Court and numerous other Federal Courts.

■ It is quite apparent that the present action is well within the decisions of the Federal Courts sustaining the jurisdiction of a Court of equity to grant relief in restraining the enforcement of prosecutions not supported by a valid, constitutional ordinance and in such cases where similar ordinances were involved, the actions of municipal or state officials are regarded as being in excess of any lawful authority vested in them.

Upon the face of the present ordinance and the charges in the criminal actions, the plaintiffs are plainly entitled to relief as in numerous cases similar rulings were made and without hesitation the Courts issued injunctions restraining criminal prosecutions where the ordinance or statute on which the prosecution was based is unconstitutional and such prosecutions would result in imprisonment or irreparable injury. Truax et al. v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283; Tyson & Brother v. Banton et al., 273 U.S. 418, 47 S.Ct. 426, 71 L.Ed. 718, 58 A.L.R. 1236.

It results from these considerations that the ordinance involved and upon which the two criminal complaints are based is unconstitutional and void, and that a preliminary injunction be issued enjoining the defendants, and all officers and agents of the City of Moscow, Idaho, from enforcing said ordinance as against the plaintiffs as prayed for in plaintiffs' complaint.

The motion of the defendants is overruled.